# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                         **Case No. 16-CR-168**

**GREGORY TIRADO, Jr., et al.**
        Defendants.

---

## DECISION AND ORDER

The government obtained an indictment charging 24 defendants with conspiracy to distribute controlled substances and related offenses. The defendants filed a number of pre-trial motions, and on January 26, 2018, the magistrate judge handling pre-trial proceedings in this case issued an order, report and recommendation. Eight defendants have filed objections.[1]

The district court reviews de novo objections regarding dispositive pre-trial motions, including motions to suppress evidence, see Fed. R. Crim. P. 59(b), but will set aside a magistrate judge's order on a non-dispositive matter, including motions seeking severance, disclosure, or a bill of particulars, only if it is contrary to law or clearly erroneous, see Fed. R. Crim. P. 59(a). For the reasons that follow, I overrule the objections, adopt the magistrate judge's recommendations, deny defendants' motions to suppress, and decline to set to aside the magistrate judge's orders on the non-dispositive motions.

---

[1] The government has not objected to the magistrate judge's recommendations favorable to defendants. I adopt those recommendations and grant Perez's motion to suppress evidence seized from his home and Dumas's motion to suppress evidence recovered from his cell phones. I do not in this decision address Tirado Sr.'s motions to dismiss count two and for a bill of particulars.

# I. MOTIONS TO SUPPRESS

## A. Title-III Intercepts

Defendants Perez, Johnson, Tirado Sr., Dumas, Sorenson, Tirado Jr., Guajardo, Reyes, Minkey, and Sorenson filed motions to suppress evidence obtained pursuant to two Title-III wiretap orders, raising a variety of arguments, which the magistrate judge rejected. (R. 454 at 2-18.) Defendants Tirado Sr., Johnson, Guajardo, Perez, Tirado Jr., Minkey, and Reyes object.

Defendants primarily argue that the wiretap applications failed the so-called "necessity" requirement. See 18 U.S.C. § 2518(1)(c) (indicating that a wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous"). "Despite its name, the necessity requirement was not intended to ensure that wiretaps are used only as a last resort in an investigation, but rather that they are not to be routinely employed as the initial step in a criminal investigation." United States v. Mandell, 833 F.3d 816, 821 (7th Cir. 2016) (internal quote marks omitted). The Seventh Circuit has explained that the government's burden "is not great" and that the requirement of exhausting other investigative procedures prior to obtaining a wiretap is reviewed in a "practical and commonsense fashion." Id. (internal quote marks omitted).

As the magistrate judge noted, the applications in this case discussed in detail why conventional techniques would be unsuccessful and/or too risky. The applications covered the serious danger to informants, the difficulty in introducing an undercover agent, and the limited usefulness of physical/video surveillance, pen/trap orders, search warrants, financial investigations, and trash pulls. (R. 454 at 10-14.) Defendants argue that these averments

were conclusory and would allow a wiretap in any drug conspiracy case, but this overlooks the specific threats made against informants in this case (id. at 11), the specific counter-surveillance measures this group employed (id. at 11-12), and the close ties between the alleged conspirators, some of whom were related, making it difficult to introduce an outsider (id. at 13).

Johnson notes that the informants were not actually harmed (R. 467 at 4), but the statute speaks of risk; it does not require than a cooperator be beaten or killed before a wiretap may be authorized. Johnson further notes that the informants were able to provide a substantial amount of information (id. at 4-5), but the affidavit reasonably averred that more information was needed to accomplish the goals of the investigation. See United States v. Goodwin, 496 F.3d 636, 640 (7th Cir. 2007) (finding necessity requirement satisfied where the government initially had success using confidential informants but those informants could not identify all suppliers, distributors, and storage locations); United States v. McLee, 436 F.3d 751, 763 (7th Cir. 2006) ("We have upheld the necessity of wiretap orders on the basis that investigators were having trouble fingering other members of the conspiracy, and that the wiretaps allowed the government to ascertain the extent and structure of the conspiracy.") (internal citations and quote marks omitted).[2] Finally, Johnson notes that the government was

---

[2] Perez contends that, contrary to the affiant's claim, the informants could have gained access to two alleged suppliers. (R. 471 at 4-5.) The government counters these assertions in its response. (R. 485 at 15-16.) In any event, § 2518 does not require the government to exhaust all other possible methods before seeking a wiretap. See United States v. Hanhardt, 157 F. Supp. 2d 978, 996 (N.D. Ill. 2001). Like Johnson, Perez also notes that the informants gained significant access to the organization (R. 471 at 7), but as Goodwin recognizes, this need not defeat a necessity showing. Guajardo notes that the police tried just one trash pull, which was doomed to fail. (R. 468 at 8.) But he cites no authority requiring the police to attempt an investigative technique multiple times before seeking a wiretap.

3

able to obtain a significant amount of information from the use of pole cameras. (Id. at 5-6.) But the affidavit explained the limited utility of that surveillance, which did not permit the agents to see what went on inside the home. (R. 454 at 12.)

Johnson and Perez challenge the wiretap orders' inclusion of "background conversations intercepted in the vicinity of the target telephone" (R. 467 at 7; R. 471 at 8), but they cite no case finding this standard language suspect. As the magistrate judge noted, two circuits have rejected similar challenges. (R. 454 at 17, citing United States v. Gordon, 871 F.3d 35 (1st Cir. 2017); United States v. Oliva, 705 F.3d 390 (9th Cir. 2012).).

Guajardo and Perez argue that the affidavits contained false statements, entitling them to a Franks hearing. See Franks v. Delaware, 438 U.S. 154 (1978). In order to obtained a Franks hearing, the defendant must make a substantial preliminary showing that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause. United States v. Dessart, 823 F.3d 395, 402 (7th Cir. 2016). Franks hearings are rarely held because these elements are hard to prove.[3] Id.

Perez argues the affidavit falsely stated that the use of informants was "too risky" when in fact agents successfully employed cooperators up until the date of the defendants' arrests. (R. 471 at 2.) Defendants disagree with the affiant's opinion regarding the degree of risk posed to the informants, but this does not make his statement false.

Guajardo and Perez raise questions about the veracity of certain statements relayed to

---

[3]Although I address this issue in the context of defendants' motion to suppress, a dispositive matter, I note that a magistrate judge's decision whether to grant a Franks hearing is reviewed deferentially under Rule 59(a). See United States v. Simmons, No. 17-CR-137, 2018 U.S. Dist. LEXIS 28532, at *2 (E.D. Wis. Feb. 22, 2018).

4

law enforcement and included in the affidavits (R. 468 at 3-4; R. 471 at 3), but the standard is not whether the affidavit contains a false statement but whether the affiant knew, or should have known, that the statement was false. See United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000) ("The fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a Franks violation. A Franks violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth.") (internal quote marks omitted). The defendants have presented no evidence regarding the affiant's state of mind, as it is their burden to do.[4] E.g., United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990).

Guajardo argues that the affiant should have conducted further investigation regarding the alleged murders of two MLD gang members, referenced in the affidavit (R. 468 at 5), but a claim that investigators "should have done more work" does not meet "the high standard required for convening a Franks hearing." United States v. Swanson, 210 F.3d 788, 791 (7th Cir. 2000). Perez also argues that this statement was false based on facts set forth in a Wisconsin supreme court decision issued in 2017. (R. 471 at 6.) As the government explains in its response, the differences between the facts set forth in the opinion and the facts in the affidavit are minor.[5] (R. 485 at 13-14.) Moreover, defendants present no evidence that the affiant knew or should have known the information he presented was wrong.

---

[4] I make no finding that the affidavit contains false statements. Rather, I note that even assuming, arguendo, some of the statements are inaccurate, defendants fail to meet their burden.

[5] For instance, the affidavit said that two gang members were killed to ensure they did not speak to law enforcement. The testimony in the state case was that one gang member was killed, while the second was shot at and pretended to be dead. (R. 485 at 13.)

5

Guajardo and Perez also fault the affiant for failing to advise the issuing judges that, after he threatened one of the informants, Tirado Sr. said, "I'm just playing." (R. 468 at 4, 6; R. 471 at 3.) As the magistrate judge explained, the circumstances of this encounter were quite intimidating. (R. 454 at 8.) It is hard to see how inclusion of this statement would change one's perception of the encounter from a serious threat to a "playful prank."[6] (R. 468 at 6.) In any event, given the extensive averments set forth in the affidavits, inclusion of this statement would not have defeated the necessity showing. See United States v. McDuffy, 636 F.3d 361, 363 (7th Cir. 2011) ("To obtain a Franks hearing [the defendant must] make a substantial preliminary showing that the omission was reckless or intentional, and that curing it would defeat probable cause[.]").

For these reasons and those stated in the magistrate judge's report, defendants' motions to suppress the Title-III evidence will be denied.

**B.     Pole Cameras**

Defendants Johnson, Tirado Sr., Guajardo, Tirado Jr., Juarez, Reyes, and Minkey filed motions to suppress evidence obtained from pole cameras trained on the front and back of a residence used by Tirado Jr. and Guajardo. The magistrate judge held an evidentiary hearing, at which a detective testified that he obtained permission from the utility company to install the cameras, which monitored the rear of the residence from July 15, 2016, to October 6, 2016, and the front of the residence from August 6, 2016, to October 6, 2016. Neither camera had infrared capabilities, recorded audio, or permitted a view inside the residence. (R. 454 at 20.) The magistrate judge found that while the cameras provided a different vantage point, the

---

[6] At another point during the encounter, after the informant laughed, Tirado Sr. allegedly said, "I'm not joking with you motherfucker." (R. 485 at 11.)

6

police could have stood on public streets in the front and back of the residence and observed the same comings and goings as captured by the cameras.[7] (Id. at 25-26.) On these facts, she found no violation of the Fourth Amendment and recommended that the motions be denied. (Id. at 21-28.)

Defendants Tirado Sr., Johnson, Guajardo, Juarez, Tirado Jr., Minkey, and Reyes object. Defendants do not challenge the magistrate judge's factual findings.[8] Rather, they argue that the use of video surveillance to constantly monitor the residence for a near-three month period violated their reasonable expectations of privacy. They rely on the concurring opinions in United States v. Jones, see 132 S. Ct. 945, 956 (2012) (Sotomayor, J., concurring); id. at 963-64 (Alito, J., joined by Ginsburg, Breyer, and Kagan, JJ., concurring in the judgment), which discuss how the use of technology for the long-term monitoring a person's public movements may violate the Fourth Amendment, even in the absence of a trespass to the person's property. See also Orin S. Kerr, The Mosaic Theory of the Fourth Amendment, 111 Mich. L. Rev. 311 (2012).

Defendants raise legitimate concerns about the use of such technology, which permits

---

[7] While the backyard was partially enclosed with fencing, the detective testified that he could see the entirety of the yard while standing on a public street. (R. 454 at 26.)

[8] Guajardo argues that the partially enclosed backyard was curtilage. (R. 468 at 10-11.) "That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." California v. Ciraolo, 476 U.S. 207, 213 (1986). Guajardo also suggests that the court may wish to disregard the detective's statement regarding what he was able to see (R. 468 at 11), but he provides no basis for doing so. Other defendants have noted that their argument does not depend on any distinction between the front of the house and the partially fenced backyard.

the police to constantly monitor citizens without the practical constraints imposed by limited resources and/or the risk of being seen. The law may be evolving to the point where this kind of surveillance will trigger Fourth Amendment protections. But as the magistrate judge noted, at this point, the Seventh Circuit has not so held, and the other circuit courts of appeal have rejected such claims. (R. 454 at 23-24, citing United States v. Houston, 813 F.3d 282, 285 (6th Cir. 2016); United States v. Bucci, 582 F.3d 108, 116-17 (1st Cir. 2009); United States v. Jackson, 213 F.3d 1269, 1281 (10th Cir. 2000).) Defendants cite no further authority in support of their motions.[9] Perhaps the Supreme Court will provide guidance on this issue in Carpenter, and if so defendants may seek reconsideration.[10] At this point, however, for the reasons stated herein and in the magistrate judge's report, their motions will be denied. See, e.g., United States v. Cantu, 684 Fed. Appx. 703, 705 (10th Cir. 2017) (affirming denial of motion to suppress pole camera evidence based on Jackson); United States v. Mazzara, No. 16 Cr. 576, 2017 U.S. Dist. LEXIS 178575, at *23-35 (S.D.N.Y. Oct. 27, 2017) (rejecting similar challenge to pole camera surveillance); United States v. Brooks, 911 F. Supp. 2d 836, 843 (D. Ariz. 2012) (denying motion to suppress pole camera footage).

---

[9] Nor do they meaningfully grapple with the distinction between pole camera footage, which records one static location, and GPS monitoring, which tracks everywhere a person goes. See Houston, 813 F.3d at 290. While long-term surveillance of a person's home could perhaps reveal some of his professional, political, or religious associations, see id. at 296 (Rose, J., concurring), this type of monitoring does not appear to raise the same concerns noted by the concurring Justices in Jones. Defendants indicate that what happens in and around a person's home should be afforded greater protection than his movements in a car, but the cameras used here captured nothing inside the home or otherwise hidden from public view.

[10] The government notes that Carpenter, which involves cell site data, may be resolved under the "third party" doctrine. (R. 485 at 7-8.)

8

## II. NON-DISPOSITIVE MOTIONS

**A.  Johnson's Motion for Bill of Particulars (Count One)**

Under Fed. R. Crim. P. 7(f), the court may direct the government to file a bill of particulars – "a more specific expression of the activities [a] defendant is accused of having engaged in which are illegal." United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991). In deciding whether a bill is needed, the key question is whether the defendant is sufficiently apprised of the charges against him in order to enable adequate trial preparation. United States v. Blanchard, 542 F.3d 1133, 1140 (7th Cir. 2008). A bill of particulars is unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense. Id. Where the indictment fails to provide the full panoply of such information, a bill of particulars is nonetheless unnecessary if the information is available through some other satisfactory form, such as discovery. Id.; see also Canino, 949 F.2d at 949 ("The nature and operations of the 'open-file' [discovery] policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary.").

The magistrate judge denied Johnson's request for a bill of particulars, noting that he made no claim that count one of the indictment failed to track the statutory language or set forth the elements. Nor did he argue that the government failed to comply with its open file policy. Rather, he argued that the discovery was so voluminous that he could not discern the contours of the conspiracy. As the magistrate judge noted, however, "a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case. Nor does a defendant have a right to know the details of how the

9

government will prove its case." (R. 454 at 43, citations omitted.) She concluded: "Consequently, the indictment and discovery materials provide Johnson with sufficient information to apprise him of the charge and enable him to prepare his defense. Johnson's motion for bill of particulars is therefore denied." (Id. at 43-44.)

In his objections, Johnson reiterates his claim "that the conspiracy alleged is so broad, and the discovery so utterly voluminous, that it inhibits his ability to prepare for trial." (R. 467 at 7.) He further indicates that the allegations in count one are conclusory, vague, and fail to set forth with specificity the time and place in which it is alleged he participated in the conspiracy. (Id. at 8.)

Johnson cites no authority in support of his argument that he is entitled to these specifics in the form of a bill of particulars. Nor does he explain how the magistrate judge clearly erred in her analysis of his motion. Further, as the government notes in its response, Johnson was initially charged in a 67-page complaint, "which sets forth abundant facts illustrating how the government intends to prove its case." (R. 485 at 22.) The government further notes that it "has created within the discovery an electronic file folder which contains the primary evidence for defendant Johnson only. This may include, but is not limited to, debrief reports, controlled buy reports, surveillance reports and documents. Additionally, defendant Johnson was provided with an electronic folder containing his own wiretap calls." (Id.) Johnson has not disputed these statements. It accordingly appears that the discovery is sufficient to enable him to prepare a defense. The magistrate judge's order denying his motion for a bill of particulars will not be disturbed.

**B.      Guajardo's Motion for Relief from Prejudicial Joinder**

Under Fed. R. Crim. P. 8(b), multiple defendants may be charged together "if they are

alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." If the joinder of defendants in an indictment "appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials." Fed. R. Crim. P. 14(a). Given the strong public interest in joint trials, e.g., United States v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir. 1987), the district court should "grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

The magistrate judge denied Guajardo's motion for severance. Guajardo cited his alleged short-term involvement in the conspiracy, his lack of familial or gang ties to the other defendants, and the disparity of the evidence against him as opposed to the others. (R. 454 at 35.) However, the magistrate judge noted that a defendant must show that he cannot obtain a fair trial without severance, not merely that he would have a better chance of acquittal at a separate trial. (Id. at 37, citing United States v. Alexander, 135 F.3d 470, 477 (7th Cir. 1998).) She further noted that, even in cases involving disparity in the amount and weight of the evidence, courts generally assume that a jury will capably sort through the evidence and follow limiting instructions to consider each count and each defendant separately. (Id., citing United States v. Thornton, 197 F.3d 241, 256 (7th Cir. 1999).) Finally, the magistrate judge cited conservation of resources as a basis for denying the motion. "Because Guajardo is charged in the conspiracy count, severing his case for trial would require many of the same witnesses to testify twice." (Id.)

In his objections, Guarjardo concedes that the magistrate judge applied the correct legal standards and understood the factual basis for his motion. (R. 468 at 13.) He nevertheless

argues that his trial should be severed based on his alleged low level association/involvement. (Id. at 14.) He contends that his trial will involve the issue of whether his individual actions amounted to conspiratorial drug distribution or were mere buyer-seller activity. He further contends that a separate trial would not overly tax the government's resources, as just two informants purportedly have evidence against him. (Id. at 15.)

It is not uncommon for one or more alleged members of a large-scale conspiracy to present a buyer-seller defense, and Guajardo cites no authority suggesting that a jury could not reasonably be expected to sift through the evidence and follow the court's instructions under these circumstances.[11] Further, disproportionality of the evidence alone is not a basis for severance.[12] United States v. Hendrix, 752 F.2d 1226, 1232 (7th Cir. 1985). Finally, in its response, the government indicates that Guajardo misunderstands the evidence it is likely to present regarding his involvement in the conspiracy: the witnesses will include not just the two informants Guajardo mentions, but also cooperating defendants, law enforcement officers who participated in a search of his residence, and agents who monitored the wiretap intercepts. (R. 485 at 19-20.) Guajardo fails to show that the magistrate judge clearly erred in denying severance.

**C.    Guajardo's Request for Disclosure of the Identity of Informants**

The government enjoys a privilege to withhold the identities of those who furnish information on violations of the law. Roviaro v. United States, 353 U.S. 53, 59 (1957). "The

---

[11] In its response, the government notes a number of instructions it expects to request. (R. 485 at 21.)

[12] As the government notes, evaluating a severance motion at this early stage also involves a degree of speculation, as it unclear which of the other 23 defendants, if any, will actually go to trial. (R. 485 at 20.)

12

government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994). The privilege will give way "once the defendant proves that the disclosure of the informant's identity is relevant and helpful to his defense or is essential to a fair determination of a cause." United States v. Bender, 5 F.3d 267, 269 (7th Cir. 1993) (internal quote marks omitted). The role of the confidential informant in the alleged criminal activity is an important factor to consider. United States v. McDowell, 687 F.3d 904, 911 (7th Cir. 2012). When the informant was a "mere tipster" the rationale for the privilege is stronger and the case for overriding it is generally weak; however, for informants who performed a transactional role in an investigation, the case for overriding the privilege and requiring disclosure may be stronger. Id.

Guajardo and Sorenson sought immediate disclosure of the identity of two informants. The government did not dispute that these informants were transactional witnesses but expressed concerns for their safety. The magistrate judge determined that disclosure of the informants' identities 45 days prior to trial, as proposed by the government, allowed sufficient time for Guajardo and Sorenson to adequately prepare for trial, and that it exceeded the common practice in this district of disclosure 30 days prior to trial. She found that Guajardo and Sorenson failed to demonstrate a genuine need for immediate disclosure that outweighed the public's interest in the safety of the informants. (R. 454 at 40-41.)

Guajardo objects, arguing that given the amount of trial preparation required 45 days is not sufficient. He suggests disclosure not less than 120 days before trial. He indicates that the witnesses can be produced for interviews at the courthouse in order to keep them safe. (R. 468 at 16-17.)

13

Guajardo fails to show that the magistrate judge abused her discretion by setting a disclosure date 45 days before trial. He does not allege that anything unique about this case calls for disclosure well in advance of the usual practice. Further, as the government notes in its response, Guajardo's proposal that the witnesses be interviewed by counsel at the courthouse does little to protect them once their identities are disclosed to the defendants. "In other words, it is the act of disclosure itself that puts the witnesses at risk." (R. 485 at 18.) I will not disturb the magistrate's judge's order.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 454) is adopted and defendants' motions to suppress evidence obtained pursuant to Title-III orders (R. 315, 320, 321, 328, 330, 333, 337, 338, 343, 376) and defendants' motions to suppress pole camera footage (R. 319, 322, 329, 334, 336, 339, 344) are **DENIED**.

**IT IS FURTHER ORDERED** that Trevian Dumas's motion to suppress evidence from his cell phones (R. 314) and Jose Perez's motion to suppress evidence from his residence (R. 316) are **GRANTED**.

**FINALLY, IT IS ORDERED** that this matter is scheduled for counsel-only **STATUS** on **Monday, April 23, 2018, at 11:30 a.m.** Given the number of defendants and the complexity of scheduling, the court will not entertain requests to adjourn this hearing. Counsel unable to attend may request another attorney stand-in.

Dated at Milwaukee, Wisconsin, this 16th day of April, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge