# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                             Case No. 16-CR-168

**GREGORY TIRADO, Jr., et al.**
        Defendants.

## DECISION AND ORDER

I previously denied the defendants' motions to suppress evidence obtained via the use of pole cameras. I granted permission to seek reconsideration after the Supreme Court decided Carpenter v. United States, 138 S. Ct. 2206 (2018), and several defendants have done so.

Carpenter does not require a different result. While the Court relied on the reasonable expectation of privacy theory endorsed by the concurrences in United States v. Jones, 565 U.S. 400 (2012),[1] the decision itself was "a narrow one." 138 S. Ct. at 2220. The Court held that the government's collection of cell-site location information ("CSLI"), which allows law enforcement to chronicle a person's past movements over an extended period of time, constituted a search for Fourth Amendment purposes. Id. at 2216. The Court stressed the breadth of information law enforcement obtains through such data:

> Mapping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political,

---

[1] The Jones majority relied on a trespass theory. It is undisputed that the police did not trespass on the defendants' property in this case.

professional, religious, and sexual associations. These location records hold for many Americans the privacies of life. And like GPS monitoring, cell phone tracking is remarkably easy, cheap, and efficient compared to traditional investigative tools. With just the click of a button, the Government can access each carrier's deep repository of historical location information at practically no expense.

Id. at 2217-18 (internal citations and quote marks omitted). The Court further noted that "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." Id. at 2218. Finally, the Court noted:

> [T]he retrospective quality of the data here gives police access to a category of information otherwise unknowable. In the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection. With access to CSLI, the Government can now travel back in time to retrace a person's whereabouts, subject only to the retention polices of the wireless carriers, which currently maintain records for up to five years. Critically, because location information is continually logged for all of the 400 million devices in the United States – not just those belonging to persons who might happen to come under investigation – this newfound tracking capacity runs against everyone. Unlike with the GPS device in Jones, police need not even know in advance whether they want to follow a particular individual, or when.
>
> Whoever the suspect turns out to be, he has effectively been tailed every moment of every day for five years, and the police may – in the Government's view – call upon the results of that surveillance without regard to the constraints of the Fourth Amendment. Only the few without cell phones could escape this tireless and absolute surveillance.

Id.

In addition to stressing the nature of the data at issue, as is pertinent here, the Court specifically qualified its decision, stating: "We do not . . . call into question conventional surveillance techniques and tools, such as security cameras." Id. at 2220. The surveillance at issue in this case "used ordinary video cameras that have been around for decades." United

2

States v. Tuggle, No. 16-cr-20070, 2018 U.S. Dist. LEXIS 127333, at *9 (C.D. Ill. July 31, 2018).[2]

Defendants note Carpenter's admonition that the Fourth Amendment was designed to place obstacles in the way of a too permeating police surveillance, 138 S. Ct. at 2214, particularly when technology permits the police to monitor activities in ways greater in kind and degree than the proverbial nosy neighbor, id. at 2219. They argue that the surveillance at issue here also permits a detailed chronicle of a person's activities, unlike techniques such as a one-time fly-over or tracking of a single trip with a beeper, and it does so at a place (the home) generally treated under the Fourth Amendment as especially private.

It is true that Carpenter distinguished the short-term public tracking approved in previous cases from the long-term surveillance of a person's every move allowed by new technologies like GPS or CSLI. However, "[p]ole cameras are limited to a fixed location and capture only activities in camera view, as opposed to GPS, which can track an individual's movement anywhere in the world." Tuggle, 2018 U.S. Dist. LEXIS 127333, at *10. Defendants fail to explain how such surveillance provides the same aggregate account of a person's life, revealing his "political, professional, religious, and sexual associations." Carpenter, 138 S. Ct. at 2217 (internal quote marks omitted); see United States v. Houston, 813 F.3d 282, 290 (6th Cir. 2016). It is undisputed that the cameras used here did not record events inside the home or otherwise permit the police to see things an officer standing on the street could not see.

---

[2]Defendants argue that the "security cameras" referenced by the Court suggest transactional or moment-in-time monitoring, e.g., while the person makes a withdrawal at an ATM, unlike the more intense surveillance at issue here. It is hard to see a meaningful distinction. In both instances, the camera records only what is in front of it, and only matters exposed to the public.

3

**THEREFORE, IT IS ORDERED** that defendants' requests for reconsideration (R. 576, 577, 579) are denied.

Dated at Milwaukee, Wisconsin, this 21st day of August, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge